IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BARON BROOKS, | ) | CASE NO. 1:06CV755 |
| | ) | |
| | ) | JUDGE WELLS |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE HERMANN |
| v. | ) | |
| | ) | |
| L.M. LIGNOS ENTERPRISE, et al., | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendants. | ) | |

This matter is before the court on referral from Judge Wells. The Clerk of Court entered default against defendants on October 17, 2006. The matter was referred to this court to conduct a default hearing in order to determine the amount of damages to be awarded to plaintiff, Baron Brooks ("Brooks"). The hearing was held on February 20, 2007; the court enters the following findings based on the testimony of Brooks and allegations deemed admitted in the complaint.[1]

 1. Plaintiff obtained service on Michael Lignos on April 22, 2006. Michael Lignos

---

[1] Service of the notice of default hearing, although not required by law, was attempted on January 29, 2007 and February 6, 2007 by mail at the addresses of record. All notices were returned as undeliverable and unable to forward.

is the statutory agent for the corporate defendants.

2. Defendants failed to file an answer to plaintiff's complaint and failed to make an appearance.

3. Plaintiff moved for entry of default judgment on July 6, 2006; default was entered on October 17, 2006.

4. Brooks testified at the hearing that he was paid $22.47 per hour as a laborer by defendant L&M Lignos Enterprise ("Lignos"). Plaintiff worked four days a week, ten hours per day. In addition he was entitled to a weekly housing allotment[2] and $20 per day for food.

5. White employees were paid for housing and food; Brooks was not.

6. Plaintiff was one of two African-Americans employed by Lignos. During the time plaintiff was employed by Lignos, he was routinely subjected to racial epithets and threats[3] by Tony Gibson, his supervisor on the job site.

7. Plaintiff reported the harassment to Steve Gibson, Tony Gibson's supervisor, and to the state inspector on the job site. He attempted to reach Michael Lignos by telephone; his call was not returned. No action was taken against Tony Gibson.

8. Brooks testified that as a result of the ongoing harassment, he "felt like a kid" and was afraid to leave his room at night, particularly after Tony Gibson threatened to have him hung by Gibson's cousins in West Virginia.

9. Brooks was terminated without cause on July 22, 2004.

---

[2] Brooks worked jobs in Pennsylvania and West Virginia.

[3] The harassment is detailed in plaintiff's complaint and is deemed admitted due to defendants' default.

10. Brooks was without work for three months. He then worked for six weeks and was unemployed from March-December 2005.

11. Brooks testified that when working for Lignos, the job would shut down on December 18, and he would remain off work until the third week of February.

12. Brooks testified that he worked for six months in Pennsylvania. He paid a weekly housing rate of $169. The court finds that Lignos failed to pay Brooks $4056 for housing and $1920 for food on that job, for a total of $5976.

13. Brooks testified that he worked for five months in West Virginia. He paid a weekly housing rate of $139 for the first three months and then shared an apartment for two months, paying $69.30 per week. The court finds that Lignos failed to pay Brooks $2224 for housing and $1600 for food on that job, for a total of $3824.

14. Brooks is entitled to $9800 from Lignos for housing and food as part of his back pay award.

15. Brooks testified that he earned $22.67 an hour for a 40 hour week. Based on that evidence, Brooks' gross income per month was $3595.20.[4]

15. After being wrongfully terminated, Brooks was unemployed for four months until he obtained his first job. For this period he is entitled to $14,380.80. He then was unemployed from March-December 2005.[5] The court finds he is entitled to $32,356.80 for the second period, for a total in lost wages of $46,737.60.

---

[4] Plaintiff's findings of fact indicates $3627.20 per month. Plaintiff did not submit any evidentiary support for that number.

[5] The court, and plaintiff, have taken into account the "down" period experienced in the construction industry from mid-December to the first of March.

16. Plaintiff's total wage and benefits loss is $56,537.60.

17. On numerous occasions (three to four times a week) Tony Gibson made harassing comments to plaintiff such as "I'm going to kick your black ass." Someone, presumably Gibson, put watermelon rinds on plaintiff's car and chicken bones outside of his motel room door. Tony Gibson would ask him whether he had cleaned up the rinds and bones. Tony Gibson threatened to have Gibson's cousins hang plaintiff when he was in West Virginia.

18. The ongoing racial harassment and discrimination impeded plaintiff's ability to perform his work, demeaned him, frightened him, and culminated in his termination.

19. Defendants engaged in discriminatory practices with malice and with reckless indifference to the federally protected rights of an aggrieved individual in violation of 42 U.S.C. § 1981a(b)(1).

20. Plaintiff is entitled to $10,000 in compensatory damages and $40,000 in punitive damages. Section 1981a(b)(3)(A) limits defendants' liability for compensatory and punitive damages to $50,000.

21. The court recommends that judgment be entered in favor of plaintiff and against defendants in the total amount of $106,537.60.

Dated: March 1, 2007
s:\Patricia A. Hemann
Patricia A. Hemann
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters,*

638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986).